UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **HELENI THAYRE** | ) | **Civil Action No. 1:20-cv-10510** |
| | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **TOWN OF BROOKLINE and** | ) | |
| **JESSE GELLER, JOHANNA SCHNEIDER** | ) | |
| **MARK ZUROFF, KATE POVERMAN,** | ) | |
| **LARK PALERMO, and RANDOLPH** | ) | |
| **MEIKLEJOHN, as they are** | ) | |
| **members of the BROOKLINE ZONING** | ) | |
| **BOARD OF APPEALS,** | ) | |
| **DANIEL BENNETT as** | ) | |
| **Building Commissioner for the TOWN OF** | ) | |
| **BROOKLINE, JOSEPH BRAGA as** | ) | |
| **Deputy Building Commissioner,** | ) | |
| **and ROBERT DOUGAN** | ) | |
| **as Building Inspector** | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF

## PLAINTIFF'S MOTION TO REMAND AND FOR ABSTENTION AND STAY OF

## FURTHER PROCEEDINGS

**Heleni Thayre, Plaintiff appearing *Pro Se***

**Ht76@gmavt.net**

**12 Euston Street #3**

**617-232-8180**

**TABLE OF CONTENTS**

<u>Page</u>

**INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**ARGUMENTS.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

   **I.**   **Under the *Pullman* doctrine, a federal court can permit plaintiffs to seek a definitive opinion from a state court on an unclear question of state law, when doing so allows the federal court to avoid decision of a federal constitutional issue.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

   **II.**  **This case meets all three prongs of the *Pullman* test** . . . . . . . . . . . . . . . . . . 5

   **III.** **Cases presenting unsettled state constitutional questions are particularly appropriate for abstention.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**PROCEDURAL CONSEQUENCES OF *PULLMAN* ABSTENTION** . . . . . . . . . . 11

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**TABLE OF AUTHORITIES**

<u>Page</u>

**CASES**

*Aetna Life Insurance Co. V. Lavoie,* 475 U.S. 813, 820 (1986) . . . . . . . . . . . . . . . . . . 10

*Albertson v. Millard,* 345 U.S. 242, 244–45 (1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Am. Booksellers Ass'n, Inc. v. Hudnut*, 771 F.2d 323, 327 (7th Cir. 1985) . . . . . . . . . . . 6

*Arizonans for Official English v. Arizona,* 520 U.S. 43, 76, 79 (1997) . . . . . . . . . . . . . 2

*Askew v. Hargrave,* 401 US. 476, 477–78 (1971) (per curiam) . . . . . . . . . . . . . . . . . . . .8

## TABLE OF AUTHORITIES (cont'd)

**Page**

### CASES

*Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 306 (1979) . . . . . . . . . . . . 7

*Barr v. Galvin*, 626 F.3d 99, 107 (1st Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Bellotti v. Baird,* 443 U.S. 622, 628 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Beauregard v. Dailey,* 294 Mass. 315, 324 (1936) . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

*Brown v. Pearl River Valley Water Supply Co.*, 292 F.2d 395 (5th Cir. 1961) . . . . . . . . 1

*Columbia Basin,* 268 F.3d 791, 802 (9th Cir.2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

*Commonwealth v. Leventhal,* 364 Mass. 718, 721 (1974) . . . . . . . . . . . . . . . . . . . . . .10

*C-Y Development Co. v. City of Redlands* 703 F.2d 375, 377 (9th Cir.1983) . . . . . . . . 5, 6

*Diaz v. Jiten Hotel Management*, 671 F.3d 78, 84 (1st Cir. 2012) . . . . . . . . . . . . . . . . . 3

*E & E Hauling, Inc. v. Forest Pres. Dist. of DuPage Cnty., Ill.,* 821 F.2d 433, 436 (7th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*England* v. *Louisiana State Bd. of Medical Examiners,* 375 U.S. 411,420-21 (1964) . . 11

*Examining Bd. v. Flores de Otero,* 426 U.S. 572, 598 (1975) . . . . . . . . . . . . . . . . . . . . 9

*Ford Motor Co. v. Meredith Motor Co.*, 257 F.3d 67, 72 (1st Cir. 2001) . . . . . . . . . . . . 7

*Harrison v. National Ass'n for the Advancement of Colored People*, 360 U.S. 169, 175 (1959) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 11

*Harris Cnty. Comm'rs Ct. v. Moore*, 420 U.S. 77, 84 (1975) . . . . . . . . . . . . . . . . . . . . 5, 8

*Hawaii Housing Auth. v. Midkiff,* 467 U.S. 229, 237 n. 4 (1984) . . . . . . . . . . . . . . . . . . 9

*King v. Grace,*293 Mass. 244, 247 (1936). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## TABLE OF AUTHORITIES  (cont'd)

<u>Page</u>

### CASES

*Kollsman v. City of Los Angeles,* 737 F.2d 830, 833 (9th Cir. 1984) . . . . . . . . . . . . . . . 5

*Lake Carriers' Ass'n v. MacMullan,* 406 U.S. 498, 511 (1972) . . . . . . . . . . . . . . . . . . . . .7

*Lehman Bros. v. Schein,* 416 U.S. 386, 391 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

*Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 29 (1959) . . . . . . . . 12

*Meridian v. Southern Bell Telephone & Telegraph Co.,* 358 U.S. 639 (1959) (per curiam) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 10 n. 9 (1983) . . .  11

*Pearl Inv. Co. v. City & County of San Francisco,* 774 F.2d 1460, 1463 (9th Cir.1985)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Pustell v. Lynn Pub. Sch.,* 18 F.3d 50, 54 (1st Cir. 1994)  . . . . . . . . . . . . . . . . . . . .  2, 11

*Railroad Commission of Texas v. Pullman Company*, 312 U.S. 496, 501-02, 61 S.Ct. 643, 645-46, 85 L.Ed. 971 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2, 4, 11

*Robinson v. Omaha,* 866 F.2d 1042, 1044 (8th Cir. 1989) . . . . . . . . . . . . . . . . . . . . .  2

*Reetz v. Bozanich,* 397 U.S. 82, 90 S. Ct. 788, 25 L. Ed. 2d 68 (1970) . . . . . . . . . . . .  9

*Santasucci v. Gallen*, 607 F.2d 527, 529 (1st Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . 3

*San Remo Hotel, L.P. v. City and County of San Francisco*, 545 U.S. 323, 347 (2005)… 3

*Shipman v. DuPre,* 339 U.S. 321, 322 (1950) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Thomajanian v. Odabshian,* 272 Mass. 19, 22 (1930) . . . . . . . . . . . . . . . . . . . . . . . . .10

*United Mine Workers v. Gibbs* , 383 U.S. 715, 726 (1966) . . . . . . . . . . . . . . . . . . . . . . 5

# TABLE OF AUTHORITIES  (cont'd)

**Page**

**MISCELLANEOUS**

Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 4248, at 174

(1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Jeffrey S. Sutton, 51 *Imperfect Solutions: States and the Making of American*

*Constitutional Law* 197 (2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## Introduction

On March 12, 2020, the Town of Brookline and the individual Defendants removed this case to federal court, pursuant to 28 U.S.C. §1441(a) on the basis that this Court has original jurisdiction of all civil actions arising under the Federal Constitution. The Town argues that removal is proper and that the Court can exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367(a). However, a plaintiff may assert that the court should abstain from assuming jurisdiction and remand the case back to state court based upon the appropriate abstention doctrine. See, e.g., *Brown v. Pearl River Valley Water Supply Co.*, 292 F.2d 395 (5th Cir. 1961).[1]

Pursuant to the *Pullman* abstention doctrine, a federal court, when confronted with circumstances in which a federal constitutional challenge turns on unsettled state law, should stay its hand in order to provide the state court an opportunity to settle the underlying state-law question. *See, e.g.,  Harrison v. National Ass'n for the Advancement of Colored People*, 360 U.S. 169, 175 (1959) ("[F]ederal courts should not adjudicate the constitutionality of state enactments fairly open to interpretation until the state courts have been afforded a reasonable opportunity to pass upon them."). Plaintiff's case is a textbook example for *Pullman* abstention: It is a dispute in which Plaintiff alleges federal constitutional claims based almost entirely on violations of state and local laws, raising complex and sensitive questions regarding the proper interpretation of those laws.

Plaintiff alleges statutory and constitutional violations pertaining to the Building Commissioner's ban on short-term rentals, which is based on an interpretation of a local zoning ordinance. The question whether the ordinance, as interpreted by the Commissioner, violates Plaintiff's constitutional rights depends largely on whether the

---

[1] A defendant may remove a civil action to federal court if that court would have had original jurisdiction over the case. 28 U.S.C. § 1441(a). Plaintiff must file its motion to remand on the basis of any defect other than lack of subject matter jurisdiction within 30 days after the filing of the notice of removal. 28 U.S.C. § 1447(c). Plaintiff timely files this motion seeking to have this matter remanded to state court for resolution.

Commissioner has properly interpreted the ordinance, particularly the Use #51 provision. Yet Use #51 has never come before a court until now. The provision has never been authoritatively construed by Massachusetts courts. Nor have Massachusetts courts ever evaluated the Building Commissioner's regulation under the Massachusetts Constitution. Plaintiff'a case will turn, at least in part, on how the state court interprets state and local laws and administrative rules,  and what effect the state court gives to the actions taken by the Building Commissioner. Yet how a state court would decide these issues is unclear. Therefore, the underlying state law issues are *unsettled*.[2]

If the meaning or method of enforcing a state law is unsettled, federal courts should abstain so that a state court has an opportunity to interpret that law.  Otherwise, a federal court that seeks to decide state law issues while they are still unsettled would run a significant risk of deciding such questions erroneously. Without an authoritative interpretation by Massachusetts courts, the federal district court's decision can be nothing more than a "forecast" of state law. *Railroad Commission of Texas v. Pullman Company*, 312 U.S. 496, 501-02, 61 S.Ct. 643, 645-46, 85 L.Ed. 971 (1941); it would require this Court to guess at—or predict—how the state courts might definitively resolve the matter. Rather than guessing, abstaining and deferring to the Massachusetts courts is more appropriate. See generally *Arizonans for Official English v. Arizona*, 520 U.S. 43, 76, 79 (1997) (discussing advantages of "plac[ing] state-law questions in [state] courts equipped to rule authoritatively on them"); *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974) (same).

Only rarely should a federal court review local zoning decisions where a state court can otherwise exercise jurisdiction. The Supreme Court has noted that "state courts

---

[2] Resolution of an issue of state law might be "unsettled" where it is "susceptible" to at least one interpretation that avoids a constitutional question, *Bellotti v. Baird,* 443 U.S. 622, 628 (1979); where there is no binding state precedent on the issue, *Pustell v. Lynn Pub. Sch.,* 18 F.3d 50, 54 (1st Cir. 1994); or where, for example, a state statute is "silent" as to the definition of key terms or "the legislative history" is "equivocal." *Robinson v. Omaha,* 866 F.2d 1042, 1044 (8th Cir. 1989).

undoubtedly have more experience than federal courts do in resolving the complex factual, technical, and legal questions related to zoning and land-use regulations." *San Remo Hotel, L.P. v. City and County of San Francisco*, 545 U.S. 323, 347 (2005). State courts also have greater expertise in interpreting their own law than do the federal courts. And by allowing the state courts to interpret their own constitutions and laws (and not attempting to predict what that interpretation might be), the federal courts honor state sovereignty and avoid the potential for erroneous results. It would be manifestly unjust if this Honorable Court told the State of Massachusetts how to interpret its laws before giving it a chance to do so.

One alternative would be to certify the state law question to the Massachusetts Supreme Judicial Court. Federal courts may, in their discretion, certify a question of state law to the state's highest court. *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974); *Diaz v. Jiten Hotel Management*, 671 F.3d 78, 84 (1st Cir. 2012). But before certifying a question to the Supreme Judicial Court, there must be no dispute as to the material facts at issue. Here, it is not at all certain that the parties agree enough on the underlying facts to meet this standard. *Santasucci v. Gallen*, 607 F.2d 527, 529 (1st Cir. 1979) at 529 (noting that the district court's decision not to certify questions of state law was "reasonable" where there were "a number of disputed factual issues" and that the presence of disputed factual issues underlying a state-law claim reinforces the desirability for the case to proceed through the normal state court system). See also Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 4248, at 174 (1988) ("Certification is not appropriate if there are a number of disputed factual issues making it difficult or impossible to agree on what the legal questions are.") A compelling reason therefore exists to allow the state court to hear this matter.

Plaintiff states the following in support thereof:

## ARGUMENT

I.     **Under the *Pullman* doctrine, a federal court can permit plaintiffs to seek a definitive opinion from a state court on an unclear question of state law, when doing so allows the federal court to avoid decision of a federal constitutional issue.**

In *Railroad Commission of Texas v. Pullman Company*, 312 U.S. 496, 501-02, 61 S.Ct. 643, 645-46, 85 L.Ed. 971 (1941), the United States Supreme Court unanimously held that a federal district court erred in deciding a challenge to a Texas regulation based on a federal constitutional argument when it was unclear under Texas law whether the commission had the authority to pass the challenged regulation in the first place. The Supreme Court held that, in these circumstances, the proper course was for the district court to abstain from reaching the equal protection issue pending a decision by the Texas courts interpreting the state statute. *Id.* at 501. The Court reasoned that, if the Texas courts determined that the statute did not authorize the Commission's regulation, then there would be "an end of the litigation," and "the constitutional issue does not arise." *Id.* That result would in turn promote the rule that "federal courts ought not to enter" into a sensitive area of constitutional law "unless no alternative to its adjudication is open." *Id.* at 498.[3]

Under the *Pullman* doctrine, a federal court is not required to address a complaint just because it raises a federal question. When an interpretation of state law is also required, and that law is uncertain, the federal court may abstain under federalism principles to allow the state court to resolve the ambiguity. Indeed, "[a]mong the cases that call most insistently for abstention are those in which the federal constitutional challenge turns on a state statute the meaning of which is unclear under state law." *Barr*

---

[3] As demonstrated by *Pullman*, abstention can be appropriate even if no state-court action is pending. 312 U.S. at 501; *see also Barr v. Galvin*, 626 F.3d 99, (1st Cir. 2010) at 108 n.3 ("Though the existence of a pending state court action is sometimes considered as a factor in favor of abstention, the lack of such pending proceedings does not necessarily prevent abstention by a federal court.").

*v. Galvin*, 626 F.3d 99, 107 (1st Cir. 2010) (quoting *Harris Cnty. Comm'rs Ct. v. Moore*, 420 U.S. 77, 84 (1975)).

**II.    This case meets all three prongs of the *Pullman* test**

The *Pullman* abstention's essential goal is to allow a state court to interpret its own law, in the hope that this interpretation will avoid the constitutional issue entirely. *United Mine Workers v. Gibbs* , 383 U.S. 715, 726 (1966).  In this way, the state court decides the state issues and the federal court avoids deciding a federal constitutional question prematurely or unnecessarily. The federal courts have identified three factors which together justify *Pullman-type* abstention: (1) the complaint must involve a sensitive area of social policy that is best left to the states to address; (2) a definitive ruling on the state issues by a state court could obviate the need for federal constitutional adjudication by the federal court; and (3) the proper resolution of the potentially determinative state law issue is uncertain:

A.    **This case meets the first prong of the *Pullman* test, because the issues involved here impinge on an area of social policy upon which federal courts ought not to enter if an alternative to its adjudication is open.** Federal courts have consistently held that "land use planning is a sensitive area of social policy that meets the first requirement for Pullman abstention." *Kollsman v. City of Los Angeles,* 737 F.2d 830, 833 (9th Cir. 1984), cert. denied, 469 U.S. 1211 (1985); *see also Columbia Basin,* 268 F.3d 791, 802 (9th Cir.2001) ("[w]e often have held that land-use planning questions 'touch a sensitive area of social policy' into which the federal courts should not lightly intrude") (citing *Pearl Inv. Co. v. City & County ofSan Francisco,* 774 F.2d 1460, 1463 (9th Cir.1985)); *C-Y Development Co. v. City of Redlands* 703 F.2d 375, 377 (9th Cir.1983) (land use planning is a sensitive area of social policy). In the particular context of local land use regulations, deference to the state court is appropriate, given the greater volume of land use litigation in state courts results in greater familiarity with land

use problems in general and with the state's scheme of land use regulation in particular. State courts have a far more intimate relation to the land use regulation process than do federal courts. They routinely decide cases involving interpretation of state and local land use laws, and apply several state law doctrines to oversee the administrations of these systems. As a result, state courts can resolve land use disputes in a more efficient and consistent manner.

B.   **The second *Pullman* factor is satisfied here, because a dispositive ruling by a Massachusetts court on the state-law questions could eliminate the need for, or substantially narrow, the scope of adjudication of the constitutional claims:** In her Complaint, Plaintiff alleges the Building Commissioner lacks the authority to enact zoning regulations that prohibit short-term rentals. A state court ruling might explain that the Building Commissioner's policies are inconsistent with state law. In that case, a state court could find the Building Commissioner's policy entirely invalid purely on state law grounds (rendering Plaintiff's federal claims moot). If the state court grants relief to the Plaintiff on the state ground and provides a clear statement that it is doing so, the case is over, and the need to construe the federal constitutional provision disappears with it. However, complete elimination of the federal constitutional questions is not necessary, and *Pullman* abstention is also proper if resolution of the pertinent state-law issue will sharpen a federal constitutional issue or affect the scope or contours of the federal litigation. See *Am. Booksellers Ass'n, Inc. v. Hudnut*, 771 F.2d 323, 327 (7th Cir. 1985*); E & E Hauling, Inc. v. Forest Pres. Dist. of DuPage Cnty., Ill.,* 821 F.2d 433, 436 (7th Cir. 1987); *C-Y Dev. Co. v. City of Redlands*, 703 F.2d 375, 380 (9th Cir. 1983). Framed as such, this case presents "the paradigm of the 'special circumstances' that make abstention appropriate" — where state law "is susceptible of a construction by the state judiciary that would avoid or modify the

necessity of reaching a federal constitutional question". *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 306 (1979).

C.  **The third *Pullman* factor is satisfied because this case presents unsettled issues of local and state law which have not been interpreted by Massachusetts courts.**  For the purposes of the *Pullman* abstention doctrine, uncertainty does not require silence in Massachusetts jurisprudence on the broad legal questions upon which Plaintiffs assert her claims. Rather, uncertainty exists when a federal court cannot predict with confidence how a state court would decide an issue of state law. Indeed, the U.S. Supreme Court has held repeatedly that the fact that a state statutory provision has not been construed by the state courts is a factor favoring abstention. *See Lake Carriers' Ass'n v. MacMullan,* 406 U.S. 498, #1 (1972); *Albertson v. Millard,* 345 U.S. 242, 244–45 (1953); *Shipman v. DuPre,* 339 U.S. 321, 322 (1950); *Spector Motor Serv.,* 323 U.S. at 104. In *Albertson,* the Court explained that "[i]nterpretation of state legislation is primarily the function of state authorities, judicial and administrative." 345 U.S. at 244. Here, the parties have presented differing interpretations of the meaning of Use #51. The provision has not been the subject of any state court decisions. Accordingly, abstention is proper because substantial uncertainty exists over the meaning of Use #51 and a state court's interpretation of said law may well obviate the need to resolve a significant federal constitutional question. See *Ford Motor Co. v. Meredith Motor Co.*, 257 F.3d 67, 72 (1st Cir. 2001)(citation omitted). ("A dispositive state court interpretation of this issue could eliminate entirely the need to address the constitutional issues.")

III.  **Cases presenting unsettled state constitutional questions are particularly appropriate for abstention.**

Few issues implicate a State's sovereign prerogative more directly than the interpretation of its constitution. *Pullman* abstention is especially appropriate where, as

here, the interrelationship between the challenged state law or local ordinance and the state constitution is unclear. *See Harris County Comm'rs Court v. Moore,* 420 U.S. 77, 84 (1975). In *Harris,* the Supreme Court explained that abstention is favored where "the uncertain status of local law stems from the unsettled relationship between the state constitution and a statute." 420 U.S. at 84. Similarly, in *Reetz v. Bozanich,* 397 U.S. 82 (1970), the Court ordered abstention because resolution of state constitutional issues by an appropriate state court "could conceivably avoid any decision under the Fourteenth Amendment and would avoid any possible irritant in the federal-state relationship." *Id.* at 86–87. Likewise, in *Meridian v. Southern Bell Telephone & Telegraph Co.,* 358 U.S. 639 (1959) (per curiam), the Court ordered abstention where the plaintiff raised state and federal constitutional challenges to a state public utilities statute, explaining that "when the state court's interpretation of the statute *or evaluation of its validity under the state constitution* may obviate any need to consider its validity under the Federal Constitution, the federal court should hold its hand, lest it render a constitutional decision unnecessarily." *Id.* at 640–41 (emphasis added).

Finally, in *Spector Motor Service,* the Court ordered abstention pending determination of state constitutional questions, explaining that the federal court was "without power" to decide state constitutional questions and that the federal court's "speculative" interpretations could be obviated or altered by state court resolution of the issues presented. 323 U.S. at 104–05; *see  *36 also Askew v. Hargrave,* 401 US. 476, 477–78 (1971) (per curiam) (remanding for consideration of whether district court should have abstained pending resolution of state constitutional challenges to the statute in issue). These cases vividly demonstrate the propriety of abstention where resolution of state constitutional questions might obviate the need to address federal constitutional issues.

While the U.S. Supreme Court has indicated that federal courts need not abstain solely on the basis of unsettled state constitutional questions where the state

constitutional provisions closely parallel provisions of the federal constitution, *see Hawaii Housing Auth. v. Midkiff,* 467 U.S. 229, 237 n. 4 (1984); *Examining Bd. v. Flores de Otero,* 426 U.S. 572, 598 (1975), the Court has "regularly" required abstention where the "challenged statute is part of an integrated scheme of related constitutional provisions, statutes and regulations, and where the scheme as a whole calls for clarifying interpretation by the state courts." *Harris,* 420 U.S. at 84 n. 8.

Applying this well-established precedent to the current case, it is clear that abstention is required. The Plaintiff alleges three violations of the Massachusetts Constitution pertaining to the Building Commissioner's ban on short-term rentals. To determine the appropriateness of the Department's implementation of Use #51, a court will have to consider the plain language of the statutes, the language of the Massachusetts constitutional provisions and application to the relevant zoning statutes, the interplay of those provisions to the issues raised by the Plaintiff, and whether the Commissioner  has correctly interpreted those provisions — all of which may require a clarifying interpretation by the state courts.

Furthermore, abstention to allow state courts to evaluate a statute under a state constitutional provisions may be most appropriate where the state provision is substantively different from the federal provision at issue. *See Reetz v. Bozanich,* 397 U.S. 82, 90 S. Ct. 788, 25 L. Ed. 2d 68 (1970) (state constitutional provisions concerning fish resources). For instance,  Article 29 "is at least as rigorous" in exacting high standards of judicial propriety as is the due process clause of the Fourteenth Amendment. *King v. Grace,* 293 Mass. 244, 247 (1936). Article 29 of the Massachusetts Declaration of Rights provides that:

> It is essential to the preservation of the rights of every individual, his life, liberty, property, and character, that there be an impartial interpretation of the laws, and administration of justice.

The article expressly secures "the right of every citizen to be tried by judges as free, impartial and independent as the lot of humanity will admit."  In light of the explicit protections guaranteed by Article 29, the critical nature of which have been frequently stressed by the Supreme Judicial Court of Massachussetts see *Commonwealth v. Leventhal,* 364 Mass. 718, 721 (1974); *Beauregard v. Dailey,* 294 Mass. 315, 324 (1936) *King v. Grace,* 293 Mass. 244, 246-47 (1936); *Thomajanian v. Odabshian,* 272 Mass. 19, 22 (1930), it can be persuasively argued that Article 29 in fact demands a *higher standard* of judicial conduct than does the due process clause of the Fourteenth Amendment, which mandates judicial disqualification for bias and prejudice only in the most extreme cases, *Aetna Life Insurance Co. V. Lavoie,* 475 U.S. 813, 820 (1986).

     Because Article 29 is not simply a counterpart to the Fourteenth Amendment but has been interpreted to be more stringent than it, the question of Defendant Schneider's bias will raise different issues under the Massachusetts Constitution than under the United States Constitution. The Massachusetts Supreme Judicial Court's interpretation of Article 29 creates a real possibility that Defendant Schneider's comments could be held to violate Article 29 regardless of whether or not it violates the Fourteenth Amendment. Thus, an evaluation of her bias under Article 29 could obviate the need to consider its validity under the Fourteenth Amendment and could therefore allow this court to avoid rendering an unnecessary constitutional ruling.

     Allowing state courts to interpret unclear statutes (and unclear rules or ordinances of local authorities) in light of the unique provisions of the state's own constitution serves the federalism concerns that underlie *Pullman* abstention and also ensures that federal courts do not render unnecessary decisions concerning the Federal Constitution. For these aforementioned reasons, pursuant to Federal Rule of Civil Procedure 7(b), Plaintiff respectfully invites this court to abstain from exercising its jurisdiction, remand the state law claims, and defer resolution of Plaintiffs' federal claims until the state courts have

had an opportunity to decide the novel issue of statutory interpretation that may be dispositive of the claim.

### PROCEDURAL CONSEQUENCES OF *PULLMAN* ABSTENTION

Pullman abstention "does not . . . involve the abdication of federal jurisdiction, but only the postponement of its exercise[.]" Harrison v. Nat'l Ass'n for the Advancement of Colored People, 360 U.S. 167, 175 (1959). If abstention is granted, the district court typically stays its proceedings and retains jurisdiction of the case pending a state court interpretation of the pertinent state law and local ordinance. Pullman, 312 U.S. at 499-502. If the state court interpretation does not eliminate the basis of the federal claims, the federal action can then resume. See *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 10 n. 9 (1983). See *Pustell v. Lynn Pub. Sch.*, 18 F.3d 50, 54 (1st Cir. 1994) (abstaining on *Pullman* grounds but retaining jurisdiction pending a decision by the Massachusetts state court on proper interpretation of statute)

In the meantime, the plaintiff may litigate both the state-law issue and the constitutional issue or choose to litigate only the state-law issue by reserving the right to return to the federal court if resolving the state law issue does not obviate the constitutional issue. *England* v. *Louisiana State Bd. of Medical Examiners,* 375 U.S. 411,420-21 (1964) Accordingly, Plaintiff should be allowed to present her federal claims in a state action or make the appropriate reservation in that venue to return to federal court if adjudication of the federal claims remains necessary.[4] Provided the plaintiff reserves the right to return to the federal court in advance, the plaintiff may return to the federal court to pursue those remaining federal constitutional claims under section 1983.

### CONCLUSION

The "basic idea" of doctrines such as *Pullman* abstention "is to discourage federal courts from intruding on sensitive and complicated issues of state law without

---

[4] So long as Plaintiff is clear that she reserves her right to return to federal court on the federal claim, the state court judgment will have no res judicata effect.

giving state courts a chance to review, and perhaps resolve, the matter first." Jeffrey S.
Sutton, 51 *Imperfect Solutions: States and the Making of American Constitutional Law*
197 (2018). Appropriate abstention, "does not constitute abnegation of judicial duty."
*Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 29 (1959). When
warranted, abstention may be a productive "postponement of decision for its best
fruition." Id. Plaintiff therefore respectfully invites this Court to invoke *Pullman,* remand
Plaintiff's claims asserted purely under state law and retain jurisdiction over the
remaining federal claims but stay further action thereon pending adjudication of
Plaintiff's state law claims in state court.

Respectfully submitted,

DATE: April 13, 2020

*Heleni Thayre*

**Heleni Thayre, Plaintiff appearing *Pro Se***

**Ht76@gmavt.net**
**12 Euston Street #3**
**617-232-8180**

## CERTIFICATE OF SERVICE

I, Plaintiff Heleni Thayre, hereby certify that on April 13, 2020, not yet being authorized

to file through the ECF system, by agreement with Counsel for the Defendants, this

document was sent electronically by email, to counsel for Defendants

DATE: April 13, 2020

Heleni Thayre, Plaintiff appearing *Pro Se*

Ht76@gmavt.net
12 Euston Street #3
617-232-8180