### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | |
| ) | |
| **HELENI THAYRE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 20-cv-10510** |
| ) | |
| **TOWN OF BROOKLINE and JESSE** ) | |
| **GELLER, JOHANNA SCHNEIDER, MARK** ) | |
| **ZUROFF, KATE POVERMAN, LARK** ) | |
| **PALERMO, and RANDOLPH** ) | |
| **MEIKLEJOHN, as members of the** ) | |
| **BROOKLINE ZONING BOARD OF** ) | |
| **APPEALS, DANIEL BENNETT as Town** ) | |
| **Building Commissioner, JOSEPH BRAGA** ) | |
| **as Town Deputy Building Commissioner, and** ) | |
| **ROBERT DOUGAN as Town Building** ) | |
| **Inspector,** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

### MEMORANDUM AND ORDER

**CASPER, J.**                                                   **February 19, 2021**

## I.    Introduction

Plaintiff Heleni Thayre ("Thayre") filed suit against the Town of Brookline (the "Town")

and the Town's Zoning Board of Appeals members Jesse Geller, Johanna Schneider, Mark Zuroff,

Kate Poverman, Lark Palermo and Randolph Meiklejohn, Building Commissioner Daniel Bennett

(the "Commissioner" or "Commissioner Bennett"), Deputy Building Commissioner Joseph Braga

and Building Inspector Robert Dougan (collectively, "Individual Defendants"). D. 1-1 at 4. The

Town and the Individual Defendants have moved to dismiss all of Thayre's federal and state

constitutional claims for procedural due process violations (Count III and IV), substantive due

1

process violations (Count V and VI) and "right to intimate association" violations (Count VII and VIII). D. 4; D. 5. For the following reasons, the Court ALLOWS Defendants' motion to dismiss.

## II.    Standard of Review

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citation omitted). Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must perform a close reading of the claim to distinguish the factual allegations from any conclusory legal allegations. Id. Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit. Id. Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted). If the complaint's allegations sufficiently state a cause of action under any viable theory, a motion to dismiss the complaint must be denied. Roth v. United States, 952 F.2d 611, 613 (1st Cir.1991). In considering such a motion, the court must "draw all inferences reasonably extractable from the pleaded facts in the manner most congenial to the plaintiff's theory." Id.

## III.    Factual Allegations

The following summary of facts is from the complaint and are assumed to be true for the purpose of resolving Defendants' motions to dismiss.[1] Thayre lives in and owns a condominium

---

[1] In reviewing the complaint, the Court can consider documents attached to or fairly incorporated into the complaint and facts susceptible to judicial notice. See Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012); McIntyre v. United States, 367 F.3d 38, 42 (1st Cir. 2004). Accordingly, the Court will also consider the Zoning Bylaw of the Town of

in Brookline, Massachusetts (the "Unit").  D. 1-1 at 9, ¶ 14.  The 1,996 square foot property consists of three bedrooms.  D. 6-4 at 7:16-24.  For nearly the entirety of Thayre's ownership of the Unit, Thayre had long-term roommates.  D. 1-1 at 9-10, ¶¶ 15-16; D. 6-4 at 5:12-14.  Following several incidences with a number of her long-term roommates, which included instances of physical and verbal abuse, D. 21-1 at 2, in 2017, Thayre began offering rooms in the Unit to the public as short-term rentals for an average of three days through the online service Airbnb.com ("Airbnb").  See D. 1-1 at 9-10, ¶¶ 15-16; D. 6-4 at 8:16-18; D. 1-1 at 73, 76, 78.

For the relevant period, a Zoning Bylaw ("ZBL") has been in effect in Brookline, which states that "[e]xcept as provided by law or in this Bylaw, in each district no building, structure, or land shall be used or occupied except for the purposes permitted in the district in the section of this Article applicable thereto."  D. 6-3 at 6, § 4.00.  It also states that "[a] use listed in § 4.07 is permitted as of right in any district under which it is denoted by the word 'Yes[,'] subject to such requirements as may be specified in § 4.07."  Id. at 6, § 4.01(1).  The ZBL permits accessory uses as of right within the Residence District, also called the "M-2.0" District, limiting such uses to a portion of the property no more than 25% of the floor area.  Id. at 6, § 4.04(1).  Under the ZBL's Chapter 4, Accessory Use #51 ("Use #51"), the ZBL permits "[t]he renting of not more than two rooms as a lodging without separate cooking facilities and for not more than two lodgers; in the case of a dwelling unit occupied by unrelated persons, the sum of lodgers and other unrelated persons shall not exceed the limits defined for a family."  Id. at 7, § 4.07 (Accessory Uses Table).  The ZBL defines "family" as "one or more persons, including domestic employees, occupying a dwelling unit and living as a single, non-profit housekeeping unit; provided, that a group of five

---

Brookline, Massachusetts (Nov. 13, 2018), D. 6-3, and the Brookline Zoning Board of Appeals Meeting Transcript (Dec. 19, 2019), D. 6-4.

or more persons who are not within the second degree of kinship, as defined by civil law, shall not be deemed to constitute a family." Id. at 4, § 2.06(1).

On May 10, 2019, Thayre received a Notice of Violation from the Town of Brookline's Building Department. D. 1-1 at 103. The Notice stated that Thayre had violated the ZBL's Chapter 4, Permitted Use #7 ("Use #7") "Lodging House requiring Special Permit." Id. The Notice required Thayre to remove the Unit from the Airbnb listings to remedy the violation. D. 1-1 at 10, ¶ 20. On June 10, 2019, Thayre appealed the citation to the Town of Brookline's Zoning Board of Appeals (the "Board"). D. 1-1 at 105-06. In her appeal, Thayre argued that her Airbnb was governed by Use #51, not Use #7, and that the definition of "lodger" did not include a minimum stay requirement. Id. She also requested that she be allowed to re-list the Unit on the Airbnb website. Id.; D. 1-1 at 12, ¶ 30.

The Board hearing was held on December 19, 2019. D. 1-1 at 13, ¶ 39; D. 1-1 at 74. During the hearing, Thayre testified that she began listing bedrooms in the Unit on Airbnb around 2017, offering the space for two to eight days, with the typical stay being three days. D. 1-1 at 78; D. 6-4 at 29:21-30:7. Thayre's downstairs neighbor testified that Thayre's operation of residence as an Airbnb caused noise disturbances and generated concerns regarding wear and tear on the building, water and insurance. D. 6-4 at 36:1-20. Deputy Building Commissioner Braga provided copies of Building Commissioner Bennett's memorandum to Board Members and Thayre at the hearing. D. 1-1 at 56, ¶ 107; D. 1-1 at 77; D. 1-1 at 108-09. Thayre's counsel, who had not received the memorandum prior to the hearing, was given a five-minute recess to read the memorandum, along with other Board Members who had not read the memorandum beforehand. D. 6-4 at 24:13-16. In the memorandum, dated December 19, 2019, Commissioner Bennett provided his interpretation of whether "lodger" refers to short-term or long-term lodgers. D. 1-1

4

at 77; D. 1-1 at 108-09.  Commissioner Bennett interpreted Use #51 as allowing only non-transient long-term rentals of more than thirty days, despite the Commissioner's admission that "the by law does not specifically reference the non-transient nature of the lodger."  D. 1-1 at 108-09.  Commissioner Bennett's memorandum noted that this was his interpretation and that of his two predecessors, dating back to 1988, and that short-term rental uses like Airbnbs were "never anticipated when this provision was adopted as part of the by law (sometime prior to 1969)."  Id.  The memorandum also stated that the ZBL is "one of inclusion" such that if a use is not permitted in the Table of Use Regulations, it is not permitted.  Id.  The memorandum concluded that because short-term rentals are not listed in the Table, the use is not allowed.  Id.; D. 1-1 at 77.  The memorandum added that a different interpretation would cause Use #51 to conflict with other provisions of the ZBL "regulating accessory uses, home occupations and office within a residence."  D. 1-1 at 108-09.  Commissioner Bennett's memorandum concluded by noting that town staff was currently working on a set of short-term rental regulations and if the Board did not uphold the Commissioner's interpretation, "the short term use would be permitted as of right and any future bylaw change would make the use preexisting nonconforming and [the] ability to regulate would be greatly diminished."  Id.  During the hearing, Deputy Commissioner Braga added that the Commissioner's interpretation of Use #51 as covering stays of more than thirty days was based in part on the State Building Code, which defines "transient" as covering stays of thirty days or less.  D. 1-1 at 78.

During deliberations, Board Chair Johanna Schneider said she "hate[d] the idea that the timing of this is such that [the Board is] being forced to weigh in on this when clearly the issue of Airbnbs is not currently contemplated in our bylaw."  D. 6-4 at 49:14-18.  She added:

> Airbnbs are everywhere.  There are many on my street.  I find them to be absolutely terrible for the neighborhood and I am extremely sympathetic to people who have

to live with it in the context of a small condo building.  I think it's awful, and I think that it is incredibly inconsiderate for a condo owner to be invading the space of their neighbors and the privacy of their neighbors and the sanctity of their condo building and posing a constant stream of transients on the people in their immediate community.  That is a separate issue from whether or not it is currently permitted under our zoning bylaw.

Id. at 49:24-50:14.

The Board Chair Schneider added that she agreed with Commissioner Bennett's memorandum that "[c]learly, Airbnb was not contemplated at the time that the definition of a lodge or a lodging house or whatever else went into [the] code." Id. at 50:17-51:10.  Several board members, including the Chair, voiced concerns regarding what would occur if they did not rule Thayre's Airbnb violated the ZBL and whether it would open a "floodgate" to other Airbnbs in the town.  Id. at 53:13-21; 53:22-54:8.

On February 5, 2020, the Board unanimously denied Thayre's appeal.  D. 1-1 at 81.  The Board's written decision reflects the testimony and statements made during the hearing, including the Board Chair Schneider's conclusion that "until the Town passes a short-term rental by-law, [Thayre's use] is not a permitted use by the By-law."  Id.

## IV. Procedural History

On February 25, 2020, Thayre, acting *pro se*, initiated this action in Norfolk Superior Court.  D. 1-1 at 2-3.  Defendants removed the action to this Court on March 12, 2020.  D. 1.  The Town and Individual Defendants have now moved to dismiss Counts III, IV, V, VI, VII, and Count VIII.[2]  D. 4; D. 5.  The Court heard the parties on the pending motions and took the matters under advisement.  D. 25.

---

[2] Thayre asserted several state law claims in her complaint, including claims under Mass. Gen. L. c. 40A § 17 (Count I), Mass. Gen. L. c. 240 § 14A (Count II), and Mass. Gen. L. c. 40A § 5 (Count IX).  D. 1-1 at 61-62, 69-70, but Defendants are not moving to dismiss any of these claims.  D. 6 at 7 n. 9.

## V.      Discussion

### A.      Procedural Due Process Claims (Counts III and IV)

Thayre alleges Defendants violated her procedural due process rights under the Fourteenth Amendment and the Massachusetts Declaration of Rights by failing to afford her an impartial tribunal, D. 1-1 at 64, ¶ 125, or provide her sufficient notice of the "ban" on short-term rentals. Id. ¶¶ 126-27.

"[A]s a general proposition, the federal and Massachusetts standards for a procedural due process analysis are identical." Christensen v. Kingston Sch. Comm., 360 F. Supp. 2d 212, 215 n. 1 (D. Mass. 2005) (citing Liability Investigative Fund Effort, Inc. v. Massachusetts Med. Prof. Ins. Assn., 418 Mass. 436, 443 (1994)). "[T]o establish a procedural due process claim under [42 U.S.C.] section 1983, a plaintiff 'must allege first that [she] has a property interest as defined by state law and, second, that the defendants, acting under color of state law, deprived [her] of that property interest without constitutionally adequate process.'" Marrero–Gutierrez v. Molina, 491 F.3d 1, 8 (1st Cir. 2007) (internal citation and quotation marks omitted).

#### 1.      Deprivation of a Property Interest

To substantiate a procedural due process claim based on the deprivation of a property interest, "[t]he plaintiff must identify a legitimate claim of entitlement to the property in question." Bos. Exec. Helicopters, LLC v. Maguire, 196 F. Supp. 3d 134, 143 (D. Mass. 2016). "For this purpose, an abstract need or desire or a unilateral expectation are not sufficient to cement a constitutionally protected interest." Id. (internal citation and quotation marks omitted); see Zaroogian v. Town of Narragansett, No. CIV.A. 88-0178B, 1988 WL 148434, at *4 (D.R.I. Sept. 29, 1988) (citing Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972)).

In the instant case, Thayre has not been deprived of property or the ability to rent her property generally, but rather, the ability to rent the Unit for intervals of thirty days or less.  On December 28, 2018, the Commonwealth enacted a law that taxes short-term rentals, including Airbnbs, and requires short-term rental owners to register with the Department of Revenue.  See generally, Mass. Gen. L. c. 64G.  The Act also enables cities and towns to enact their own local regulations and registration and licensing requirements for short-term rentals.  Mass. Gen. L. c. 64G, § 14.[3]  With the exception of permitted lodging houses or hotels, the Town's ZBL does not reference short-term rentals as a permitted use, see generally D. 6-3, nor does the Court conclude that any Town or Commonwealth law confers a property right to Thayre to engage in short-term rentals.  See Santiago–Ramos v. Autoridad de Energía Eléctrica de Puerto Rico, AEE, 834 F.3d 103, 106 (1st Cir. 2016) (noting that an interest only becomes a protected property interest "when recognized by state statute or a legal contract, express or implied, between the state agency and the individual") (quoting Marrero–García v. Irizarry, 33 F.3d 117, 121 (1st Cir. 1994)).

> 1.    *Adequate Notice*

Even assuming Thayre had a recognized property interest in the use of her Unit for short-term rentals, she does not adequately allege that Defendants failed to provide her with adequate notice.  Due process is "flexible" and "calls for such procedural protections as the particular situation demands."  Morrissey v. Brewer, 408 U.S. 471, 481 (1972).  "Despite this flexibility, it is well-settled that the essential requirements of procedural due process include adequate notice and an opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  Aponte-

---

[3] Chapter 64G defines "occupancy" for short-term rentals that are not bed and breakfasts, hotels, lodging houses or motels, as "the use or possession or the right to the use or possession of a room in a short-term rental normally used for sleeping and living purposes for a period of not more than 31 consecutive calendar days . . ."  Mass. Gen. L. c. 64G, § 1.

Rosario v. Acevedo-Vila, 617 F.3d 1, 9 (1st Cir. 2010) (quoting Amsden v. Moran, 904 F.2d 748, 753 (1st Cir. 1990)); see Kercado-Melendez v. Aponte-Roque, 829 F.2d 255, 263 (1st Cir. 1987) (noting that "[a]n essential principle of due process is that a deprivation of life, liberty or property 'be preceded by notice and opportunity for a hearing appropriate to the nature of the case'"). To satisfy due process, notice must be "'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" Mard v. Town of Amherst, 350 F.3d 184, 189 (1st Cir. 2003) (quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)). Courts have noted "that clear language in a statute can give notice," of the impending deprivation or suspension of a property interest, "particularly where the individual is aware of the statute." Crawford v. Blue, 271 F. Supp. 3d 316, 328 (D. Mass. 2017) (citing Mard, 350 F.3d at 190 (noting that plaintiff "could have turned to the statute . . . if she was unclear about the reason for the Town's request")).

Here, Thayre received a Notice of Violation that she had violated ZBL Ch. 4, Permitted Use #7, which requires a Special Permit for Lodging Houses. D. 1-1 at 103. The Notice required Thayre to remove the Unit from Airbnb's listings within thirty days of receipt of the notice or to otherwise face fines amounting to $1,000 per day "for each day the violation exists," as well as "enforcement actions" and "court action." Id. In Thayre's appeal, Thayre stated that the Unit was "not governed by Use #7 (lodging house) but by Use #51 (renting of not more than two rooms to a lodger within a dwelling unit)." Id. at 105. At the Board hearing, the Board agreed that Thayre's alleged violation fell under Use #51 rather than Use #7, with Commissioner Bennett's memorandum addressing Use #51. D. 1-1 at 108-09; D. 6-4 at 18:15-22.

Procedural due process solely requires notice sufficient to appraise interested parties "of the pendency of the action." Mard, 350 F.3d at 189. When considering whether notice is

sufficient, the Court must "take into account the particular circumstances and conditions under which the [notice] was sent." Id. at 190.  While the Notice of Violation Thayre received cited the wrong use number, even as alleged, the notice and ZBL were reasonably calculated to appraise Thayre that her Airbnb allegedly violated the ZBL, that she had a right to appeal and that her ability to host Airbnb guests may be terminated.  See, e.g., id. at 189 (affirming district court's entry of summary judgment on procedural due process claim where "[i]n light of the state statute, the collective bargaining agreement, and [plaintiff's] experience with a previous independent medical examination, the Town's letter . . . was reasonably calculated to apprise [plaintiff] of the pendency of both the examination and the potential termination of her benefits").  The sufficiency of said notice is supported by Thayre having received the Notice of Violation, appealed the notice within thirty days and disputed the alleged violation at the Board hearing.  D. 1-1 at 13, 103, 105.  Thayre was aware ahead of the hearing that Use #51, rather than Use #7, would be at issue.  D. 1-1 at 105-06.  An incorrect use number in the Notice of Violation does not amount to a procedural due process violation.  Cf. Gallant v. City of Fitchburg, 739 F. Supp. 2d 39, 47 (D. Mass. 2010) (denying motion to dismiss where unclear whether plaintiff had any opportunity to be heard before his property was demolished).  This is not a case in which an alleged property interest was lost "without any prior notice or opportunity to respond."  Mard, 350 F.3d at 190-91; see Miller v. Town of Wenham Massachusetts, 833 F.3d 46, 55 (1st Cir. 2016) (holding plaintiff had not been deprived of any constitutionally protected property interest without due process of law where he "retained his right to initiate, receive notice of, and participate in a [Zoning Board of Appeals] proceeding . . .").

　　　　2.　　　*Adequate Process*

Moreover, Thayre does not adequately allege that Defendants failed to provide her with "constitutionally adequate process" when depriving her of said interest.  Marrero-Gutierrez, 491 F.3d at 8.  To assess what process was provided and whether it was constitutionally adequate, the Court "examine[s] the procedural safeguards built into the statutory or administrative procedure . . . effecting the deprivation, and any remedies for erroneous deprivations provided by statute or [ ] law."  Licari v. Ferruzzi, 22 F.3d 344, 347 (1st Cir. 1994) (quoting Zinermon v. Burch, 494 U.S. 113, 126 (1990)).  Where a state has "provided reasonable remedies to rectify a legal error by a local administrative body . . . due process has been provided . . ."  Creative Env'ts, Inc. v. Estabrook, 680 F.2d 822, 832 n. 9 (1982); see Zinermon, 494 U.S. at 126 (noting that "[t]he constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process").

Thayre alleges that "Chair Schneider's predisposition to rule against anyone who offers rentals in their home via Airbnb.com," and the Chair's "participation in the Decision" despite that predisposition, violated Thayre's due process rights. "'[M]embers of local boards have considerable leeway for the free exercise of their personal views before any possible due process claim might exist.'"  W. St. Grp. LLC v. Epro, 564 F. Supp. 2d 84, 92 (D. Mass. 2008) (dismissing due process claim where Commissioner "submitted an opinion article to a local newspaper on the eve of the ZBA vote, expressing negative views about low income housing projects" and allegedly "shared information from the ZBA public hearings with newspapers . . . to cast the development project in a negative light").  Furthermore, despite the Chair's alleged predisposition against Airbnb, Thayre fails to dispute that she was afforded an adequate opportunity to be heard, see generally D. 6-4, particularly in the face of a unanimous ZBA decision after hearing that explained the grounds for the Board's disapproval, D. 1-1 at 73-81.  See Saltzman v. Town of Hanson, 935

11

F. Supp. 2d 328, 341-42 (D. Mass. 2013) (noting that allegedly biased administrator "was not the only decision maker" and "does not create a trial worthy issue regarding a lack of due process" given Board's unanimous vote).  Thayre does not allege, beyond conclusory allegations, that the Chair's or other Board members' views prevented Thayre from obtaining constitutionally adequate process.  See, e.g., Licari, 22 F.3d at 348 (noting that "it is enough to satisfy the Due Process Clause that the opportunity for . . . a response exist[s]");  Torres v. Bd. of Appeals of Town of Freetown, No. CIV.A. C-95-01659, 1998 WL 90739, at *4 (Mass. Super. Jan. 26, 1998) (holding plaintiff was "afforded a full, fair and impartial hearing" where the court reviewed the transcript and concluded plaintiff's counsel "was never prevented from presenting fully the merits" of plaintiff's appeal before the Board).

Constitutionally adequate process requires the provision of a sufficient remedy for the "erroneous deprivation" of a property interest.  Licari, 22 F.3d at 347.  Here, even if assuming *arguendo* that Thayre was erroneously deprived of a property interest, her case was presented by counsel at a hearing to appeal the Notice of Violation.  D. 1-1 at 75-81.  Over the course of the hearing, Board members asked questions, discussed the merits of Thayre's case, provided their views on how the Board should rule, Id. at 75-81, and ultimately unanimously rejected Thayre's appeal, thereby upholding the Notice of Violation, Id. at 81.  See, e.g., Burnham v. City of Salem, Mass., 101 F. Supp. 2d 26, 35 (D. Mass. 2000) (noting that "[s]hould any doubt exist as to the adequacies of Massachusetts' post-deprivation remedies, it is answered by the provision under the [M.G.L.] for an appeal to the Board [ ] for disputes over building permits, to which [plaintiff] in fact appealed").

Accordingly, Thayre fails to allege sufficient facts to state a procedural due process challenge.  The Court grants Defendants' motion to dismiss as to Counts III and IV.

B.     **Substantive Due Process Claims (Counts V and VI)**

In Counts V and VI, Thayre alleges the Board violated her substantive due process rights under both the federal and state constitutions by interpreting the ZBL in a manner beyond the scope of its authority.  D. 1-1, at 65, ¶ 132-39.  Both federal and state substantive due process "prohibit[ ] governmental conduct that 'shocks the conscience' or infringes on rights 'implicit in the concept of ordered liberty.'"  Commonwealth v. Wilbur W., 479 Mass. 397, 403 (2018) (applying the Fourteenth Amendment and Art. 12 of the Massachusetts Declaration of Rights when assessing substantive due process claim).[4]

"[S]ubstantive due process prevents the "abuse of government power that shocks the conscience, or action that is . . . not sufficiently keyed to any legitimate state interest."  PFZ Props., 928 F.2d at 31-32.  Although the First Circuit routinely rejects "substantive due process claims in the zoning and land-use contexts, it has 'left the door slightly ajar for federal relief in truly horrendous situations.'"  Brockton Power LLC v. City of Brockton, 948 F. Supp. 2d 48, 69 (D. Mass. 2013) (internal citation and quotation marks omitted); see Bos. Exec. Helicopters, LLC v. Maguire, 196 F. Supp. 3d 134, 143 (D. Mass. 2016) (internal citation and quotation marks omitted) (noting that a claim "will not lie for a 'run-of-the-mill dispute between a developer and a town official,' but attaches only in a truly 'conscience-shocking situation'").  To state a substantive due process claim in the land-use context, "a plaintiff must allege 'fundamental procedural irregularity, racial animus, or the like,' or violation of "a fundamental principle.'"  Brockton Power LLC, 948 F. Supp. 2d at 69 (quoting Clark v. Boscher, 514 F.3d 107, 113 (1st Cir. 2008)).  While the First

---

[4] Art. 12 of the Massachusetts Declaration of Rights, in conjunction with Arts. 1 and 10 of same, parallels the due process clause of the U.S. Constitution.  Duarte v. Comm'r of Revenue, 451 Mass. 399, 412 (2008) (citing Pinnick v. Cleary, 360 Mass. 1, 14 n. 8 (1971)); Commonwealth v. Alvarez, 413 Mass. 224 n. 4 (1992), abrogated by Commonwealth v. Kelly, 484 Mass. 53 (2020).

Circuit acknowledges its "various incantations" of the substantive due process standard, it is "satisfied that, before a constitutional infringement occurs, state action must in and of itself be egregiously unacceptable, outrageous, or conscience-shocking." Mongeau v. City of Marlborough, 492 F.3d 14, 19 (1st Cir. 2007).

Thayre argues the shocks-the-conscience test does not apply here, because her challenge is to a "broad legislative enactment[ ]" rather than an "individual executive action." D. 21 at 24. She argues that the shocks-the-conscience test is "ill-suited for determining whether land use regulations violate substantive due process." Id. In the First Circuit, however, the shocks-the-conscience test applies here. See, e.g., Mongeau, 492 F.3d at 17 (holding that the plaintiff's allegations as to why a city official denied his building permit and interfered in the zoning process failed to shock the conscience); Licari, 22 F. 3d at 349 (denying substantive due process claim where plaintiffs alleged 'hostility and animus' motivated the revocation of a building permit and the issuance of certain enforcement orders); Greenup v. City of Cambridge, No. 081636, 2009 WL 1448982, at *2 (Mass. Super. Apr. 15, 2009) (denying claims that town planning board intentionally delayed and frustrated subdivision development plan). Even assuming her allegations are true, as the Court must at this point, Thayre has failed to meet this standard.

To the extent that Thayre alleges Defendants violated her substantive due process rights by interpreting the ZBL in a manner beyond the scope of its authority, thereby committing *ultra vires*, even such action does not rise to the level of a violation of substantive due process. See, e.g., Freeman v. Planning Bd. of W. Boylston, 419 Mass. 548, 563 (1995) (granting defendants' motion to dismiss where despite Board's improper attempt to impose conditions beyond the scope of its authority, "its members were motivated by doubts about the safety of the intersection, a legitimate area of concern . . ." and "there was no evidence of personal animus, that other [individuals] were

14

treated more favorably than plaintiff, or that board members stood to profit personally from their actions"). A regulatory board does not transgress constitutional due process requirements "'merely by making decisions 'for erroneous reasons' or by making 'demands which arguably exceed its authority under the relevant state statutes.'" Licari, 22 F.3d at 350 (quoting Amsden v. Moran, 904 F.2d 748, 757 (1st Cir. 1990)); Freeman, 419 Mass. at 560 (noting that "[i]t is not enough to show that the board 'exceeded, abused or "distorted" its legal authority,' or that it committed an outright violation of State law"). Ultimately, "[t]he ordinary state administrative proceeding involving land use or zoning does not present [a violation of a constitutional right], regardless of how disappointed the license or privilege seeker may feel at being . . . turned down." Rosenfeld v. Bd. of Health of Chilmark, 27 Mass. App. Ct. 621, 628 (1989) (quoting Creative Env'ts, Inc., 680 F.2d at 832 n. 9)) (holding that plaintiff's allegations failed to implicate federal due process "where it is [not] alleged that the State procedures themselves are flawed or 'where the defendant['s] alleged conduct is so egregious that 'it shocks the conscience'"").

Here, the most Thayre alleges is that the Commissioner "ventured beyond the limits of his authority" when he interpreted the definition of 'lodger' to exclude short-term rentals. D. 1-1 at 67, ¶ 138. However, not only does the Board have the authority to interpret its own zoning by-laws, but the Court is required to "review with deference the legal conclusion within the authority of the board." Phantom Ventures LLC v. DePriest, 240 F. Supp. 3d 239, 246 (D. Mass. 2017). "[A] reasonable construction that a zoning board of appeals gives to the by-laws it is charged with implementing is entitled to deference." Phantom Ventures LLC, 240 F. Supp. 3d at 246. Even if the Board erred in its interpretation of the ZBL, it did not violate Thayre's substantive due process rights by engaging in such interpretation. Accordingly, the Court allows Defendants' motion to dismiss as to Thayre's federal and state substantive due process claims, Counts V and VI.

C.      <u>**Right to Intimate Association Claims (Counts VII and VIII)**</u>

Thayre alleges that the ZBL, as interpreted by the Board, abridges "the right of homeowners to enter into intimate associations with their guests." D. 21 at 2.  The right to intimate association guarantees an individual the choice of entering an intimate relationship free from undue intrusion by the state.  <u>Roberts v. United States Jaycees</u>, 468 U.S. 609, 617-18 (1984).  Decisions regarding the right to intimate association tend to fall into two categories:  "the protection of the freedom to enter into and maintain certain intimate human relationships" and "the right to associate with others for the purpose of engaging in those activities protected by the First Amendment." <u>Rosenberg v. City of Bos.</u>, No. 08 MISC 377101 (CWT), 2010 WL 2090956, at *9 (Mass. Land Ct. May 25, 2010) (citing <u>Roberts</u>, 468 U.S. at 617-18).  Protected affiliations "center on family and include marriage, childbirth, education of children, and cohabitating with relatives." <u>Id.</u> The protected right of association, however, "cannot be reinvented to suit a plaintiff's fancy."  <u>URI Student Senate</u>, 631 F.3d at 12 (noting that the right to associate has never been expanded to protect "purely social gatherings").   It cannot be stretched to form a "generic right to mix and mingle." <u>Id.</u> at 12-13.

"Determining the limits of state authority over an individual's freedom to enter into a particular association . . . unavoidably entails a careful assessment of where that relationship's objective characteristics locate it on a spectrum from the most intimate to the most attenuated of personal attachments."  <u>Roberts</u>, 468 U.S at 620.  Factors considered in this assessment include "size, purpose, policies, selectivity, congeniality, and other characteristics that in a particular case may be pertinent." <u>Id.</u>  The Court must also assess whether the associations involved are the "kinds of personal bonds [that] have played a critical role in the culture and traditions of the Nation by cultivating and transmitting shared ideals and beliefs."   <u>Poirier v. Massachusetts Dep't of</u>

Correction, 532 F. Supp. 2d 275, 279 (D. Mass. 2008) (quoting Roberts, 468 U.S. at 618-19), aff'd, 558 F.3d 92 (1st Cir. 2009). "What can give constitutional significance to a particular association that involves only a few select people who have bonded together to exclude others is the fact that the particular association in question is one that has been 'so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" Id.

Thayre fails to define precisely the type of relationship she believes is at stake in her case, referring to the relationship as one between Airbnb hosts and guests, between roommates and between friends. D. 1-1 at 61-62, ¶¶ 114-116. That is, Thayre argues that "sharing a dwelling with another person is by definition an intimate association worthy of constitutional protection." D. 1-1 at 61, ¶ 114. Accordingly, the right Thayre seeks to protect is the cohabitation of unmarried adults. In support of her argument, Thayre cites cases in which the Supreme Court has protected intimate associations and the sanctity of the home. See, e.g., Lawrence v. Texas, 539 U.S. 558, 574 (2003) (holding statute that criminalizes two persons of same sex engaging in intimate sexual conduct unconstitutional under the Fourteenth Amendment); Stanley v. Georgia, 394 U.S. 557, 565 (1969) (holding that First and Fourteenth Amendment prohibit State from barring mere possession of obscene material in the home); Minnesota v. Carter, 525 U.S. 83, 99 (1998) (Kennedy, J., concurring) (addressing whether individuals had a legitimate expectation of privacy in the home during drug search). Thayre also references the dissent in Vill. of Belle Terre v. Boraas, that "[t]he selection of one's living companions involves similar choices as to the emotional, social, or economic benefits to be derived from alternate living arrangements." Vill. of Belle Terre v. Boraas, 416 U.S. 1, 15 (1974) (Marshall, J., dissenting). In that case, the dissent concluded that the ordinance at issue "limit[ed] the density of occupancy of only those homes occupied by unrelated persons," and thereby "reaches beyond control of the use of land or the

density of population, and undertakes to regulate the way people choose to associate with each other within the privacy of their own homes." Id.  Contrary to Justice Marshall's dissent, the Court in Boraas held that the ordinance at issue, which defined 'family' as not more than two unrelated persons and limited land use to one-family dwellings, was constitutional, in part because the ordinance involved "no 'fundamental' right guaranteed by the Constitution." Id. at 7.

Thayre argues that the Supreme Court, in cases like Lawrence and Stanley, has "indicated an expanded idea of protection of associations beyond the family, beyond sex, and between those who choose to live together." D. 21 at 3.  Thayre asserts the host-guest relationship should fall under these protections given the extent to which Airbnb hosts and guests can develop intimate relationships with one another. Id. at 4-6.  To support her proposition, Thayre cites entries from her Airbnb's guestbook, in which her guests provided handwritten notes attesting to the relationships they developed with Thayre during their stay.  D. 21-2; D. 21-3; D. 21-4; D. 21-5; D. 21-6; D. 21-7; D. 21-8; D. 21-9; D. 21-10.  The right to intimate association is intended to protect relationships that are "distinguished by such attributes as relative smallness, a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship." Roberts, 468 U.S. at 620.  "[A]n association lacking these qualities— such as a large business enterprise—seems remote from the concerns giving rise to this constitutional protection." Id.  While Thayre views a number of the relationships she has made with her guests as familial, the relationships that may or may not be forged during an Airbnb stay are not the type of relationships the right to intimate association is intended to protect.  The First Circuit has held that "[t]he unmarried cohabitation of adults does not fall under any of the Supreme Court's bright-line categories for fundamental rights . . ." Poirier, 558 F.3d at 96 (upholding district court ruling that regulation prohibiting plaintiff from living with a former inmate, with

whom she had developed a personal relationship, did not violate right to intimate association); see Boraas, 416 U.S. at 7-9 (holding ordinance that limits occupancy of one-family dwellings to families constitutional where ordinance "place[s] no ban on other forms of association," since "a 'family' may, so far as the ordinance is concerned, entertain whomever it likes").  The Constitution does not recognize a "generalized right of 'social association that includes chance encounters.'" City of Dallas v. Stanglin, 490 U.S. 19, 24 (1989) (rejecting petitioners' claim that ordinance regulating age of dance hall attendees violated right to intimate association given that "[m]ost [attendees] are strangers to one another, and the dance hall admits all who are willing to pay the admission fee").

Turning to the Roberts criteria, Airbnb guests are selected from a significant pool of housing-seekers with the website offering hosts various options for selectivity.  Thayre cites Fair Hous. Council of San Fernando Valley v. Roommate.com, LLC to support her argument that the relationship she establishes with guests, which she parallels to the relationship between roommates, qualifies for protection under Roberts, as "[p]eople generally have very few roommates; they are selective in choosing roommates; and non-roommates are excluded from the critical aspects of the relationship."   Fair Hous. Council of San Fernando Valley v. Roommate.com, LLC, 666 F.3d 1216, 1221 (9th Cir. 2012) (noting that "[a]side from immediate family or a romantic partner, it's hard to imagine a relationship more intimate than that between roommates, who share living rooms, dining rooms, kitchens, bathrooms, even bedrooms").   By the very nature of the Airbnb service, however, many hosts do not develop any relationship with their guests, with some hosts choosing to stay elsewhere during their guest's stay.  As noted by Thayre herself, "most [guest-host relationships] are quite short-lived; they form and dissolve as guests arrive and depart," D. 21 at 4.

Thayre states that the relationship she forges with her guests is more personal and akin to friendship. D. 1-1 at 60-61, ¶ 115; D. 21 at 4; see, e.g., Hurley v. Town of Southampton, No. CV175543JSAKT, 2018 WL 3941944, at *7 (E.D.N.Y. Aug. 13, 2018) (holding that because plaintiff failed to allege "that he shared a familial or otherwise close emotional relationship with his tenants, the right of intimate association is inapplicable").  Even as alleged, Thayre fails to allege that the guest-host relationship has "played a critical role in the culture and traditions of the Nation by cultivating and transmitting shared ideals and beliefs."  Roberts, 468 U.S. at 618-19; see, e.g., Poirier, 532 F. Supp. 2d at 280 (granting motion to dismiss plaintiff's right to intimate association claim where "[w]hile it may be assumed that throughout the Nation's history unmarried persons not related by blood have shared living arrangements of various kinds, such an 'association' or relationship is not—that is, has never been recognized as being—the kind of 'personal bond' that has 'played a critical role in the culture and traditions of the Nation by cultivating and transmitting shared ideals and beliefs'").  While Thayre argues that Airbnb "promotes its service as a way to 'creat[e] durable, lasting relationships between host and guests that continue long after a reservation has ended,'" the extent to which this has proven true for Thayre does not make the Airbnb host-guest relationship one rooted in our culture and traditions, nor does it make the relationship integrally intimate.  The First Circuit has specifically "decline[d] to expand upon" the Supreme Court's bright-line categories for fundamental rights to include the cohabitation of unmarried adults.  Poirier, 558 F.3d at 96.  Accordingly, with no fundamental right or protected relationship at issue, the right to intimate association is inapplicable.

**VI.     Conclusion**

For the foregoing reasons, the Court ALLOWS Defendants' motion to dismiss as to Counts

III, IV, V, VI, VII and VIII.  D. 4; D. 5.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge